STATE *ex rel.* SOWELL *v.* GREER.

(Division B.  Oct. 20, 1930.)

[130 So. 482.  No. 28873.]

316

**J. F. Dean,** of Senatobia, for appellant.

**Forrest B. Jackson,** Assistant Attorney-General, for the state.

Argued orally by **J. F. Dean,** for appellant, and by **Forrest B. Jackson,** Assistant Attorney-General, for the state.

**Anderson, J.,** delivered the opinion of the court.

Appellant, the state, on the relation of J. R. Sowell, filed a petition in the nature of a quo warranto in the circuit court of Tate county against appellee, for the purpose of ousting the latter as one of the trustees of the Greenleaf consolidated school district of that county, and having Sowell declared the legally elected trustee of such school district in the place of appellee. Appellee demurred to the petition, which demurrer was sustained, and the petition dismissed. From that judgment appellant prosecutes this appeal.

The petition, leaving off its formal parts, is in this language:

"That on the first Saturday in March, 1930, same being the first day of March, the patrons of Greenleaf Consolidated School of Tate county, Mississippi, met at the schoolhouse in said district at 2 o'clock, P. M. as required by law and proceeded to elect a chairman and secretary who were respectively Van Thomas and M. H. Massey and Floyd Dossett for the purpose of holding an election to elect a trustee for said Greenleaf Consolidated School for three years. At said meeting the holdover trustees prepared and presented a list of the names of the patrons of the school entitled to vote for trustees. No proxies were allowed or voted. At such election so held as required by law in all respects there were cast by the qualified electors one hundred eleven votes, of which number relator, J. R. Sowell, received the sum of

fifty-eight votes and his opponent the sum of fifty-three votes, the said J. R. Sowell was duly and legally elected trustee of said district. The chairman of said election when he saw that his candidate for the office of trustee of said school was defeated arbitrarily refused without any cause to sign as required by law the certificate of the election of said J. R. Sowell as such trustee, but said certificate was duly signed by the secretaries and by one of the trustees and was delivered to Mrs. Winnie Clayton Smith, county superintendent of education of Tate county, Mississippi, at her office in Senatobia before the following Saturday but said superintendent of education refused to accept said certificate of the election of relator, holding that said election was void because the chairman of the said election refused to sign same and without any notice by posting three notices in the school district, one of which should be posted at the door of the schoolhouse, within three days after the alleged vacancy occurred, giving the number of the vacancies, the names of those vacating the office of trustee and why and on what date and further to the effect that the patrons of the school district are given notice that they have ten days in which to hold an election to fill such vacancy and without giving the patrons of the district ten days within which to elect a trustee, even if there had been a vacancy, to fill same, she appointed defendant Lem Greer as trustee of said district, without authority of law.''

''Relator J. R. Sowell is a person of good moral character, a patron of the school, able to read and write and eligible to vote in trustee's elections as defined by law in order to be qualified to hold such office and relator was fully and legally qualified to hold said office of school trustee of said Greenleaf Consolidated School.

''Therefore, the state of Mississippi on the relation of J. R. Sowell gives the court here to understand and be informed that a certain person, Lem Greer has for six days last past used and still does use the following liber-

.ties and franchises without lawful authority, to-wit, the office of school trustee of Greenleaf Consolidated School of Tate county, Mississippi, in said county, which said franchises and privileges the said Lem Greer has usurped and still usurps.

"Wherefore the state of Mississippi by said J. R. Sowell prays that he be debarred of such rights and that relator J. R. Sowell be recognized as the trustee duly and legally elected and qualified for said Greenleaf Consolidated School District."

Section 72 of the School Code (Laws 1924, chapter 283), section 8707 of Hemingway's Code of 1927, provides as follows: "On the first Saturday in March of each year, the patrons of each district not constituting a separate school district shall meet at the schoolhouse at two o'clock P. M., organize and elect a chairman and secretary; and then elect by ballot, one trustee for three years. At each such meeting the holding-over trustees shall have prepared and present a list of names of patrons entitled to vote for trustees. No proxies shall be allowed. The chairman and secretary shall forthwith certify the result of the election to the county superintendent and cause the certificate thereof to be delivered to him on or before the following Saturday. The principal teacher shall announce to the school the date of holding such election during the week preceding such election."

It will be noted that the statute contains this provision: "The chairman and secretary shall forthwith certify the result of the election to the county superintendent and cause the certificate thereof to be delivered to him on or before the following Saturday." And it will be noted from the petition that the secretary of the meeting of the patrons, at which the election was held, complied with this provision of the statute, and, in addition, that the clerk of the meeting, as well as the other trustees of the school, joined in the certificate, but that the chairman

of the meeting arbitrarily refused to sign the certificate of election.

Appellee contends, and the court held, that for that reason (the refusal of the chairman to join in the certificate) the election was void, resulting in a vacancy in the office of trustee, which vacancy the county superintendent of education undertook to fill under the authority of the last paragraph of section 73 of the School Code, section 8708 of Hemingway's Code of 1927, which provides that after the expiration of ten days, if no election has been held, the county superintendent shall fill the vacancy by appointment, and the trustee shall hold office until the end of the vacant term, and until his successor shall be elected and qualify.

The question is whether the chairman of the patron's meeting can arbitrarily nullify the action of the meeting by refusing to sign the certificate of election, as provided by section 72 of the School Code, section 8707 of Hemingway's Code of 1927. According to the averments of the petition, that is what happened in this case.

The duties and obligations conferred by the statute on the chairman and secretary of the patrons' meeting for the election of the school trustees, and the county superintendent of education, are analogous to the duties and obligations conferred by the election laws on the managers of election and county election commissioners. Section 4177 of the Code of 1906, section 8068 of Hemingway's Code of 1927, provides that the statement of the result of the election in the election district shall be certified and signed by the managers and clerks of the election; and the pollbooks, tally lists, lists of voters, ballot boxes, and ballots shall be delivered to the county election commissioners. And section 4178 of the Code of 1906, section 8069 of Hemingway's Code of 1927, provides, among other things, that, when the result of the election shall be ascertained by the managers, they, or one of their number, or some fit person designated by them,

shall, by noon of the second day after the election, deliver to the county commissioners of election, at the courthouse, a statement of the whole number of votes given for each person, and for what office; and the county commissioners shall canvass the returns, and ascertain and declare the result; and within ten days after the day of election shall deliver a certificate of his election to the person having the greatest number of votes for the county office for which he is a candidate.

It will be noted that the statute requires that the result of the election at each voting place ''shall be certified and signed by the managers and clerks.'' What would be the result if one or more of the managers or clerks should refuse to certify the result of the election—would the county election commissioners be powerless to accept the certificate of those who were willing to sign? Would the county election commissioners be without authority to inquire into and ascertain the true result of the election? We think not. If the returns are certified by some, but not all, of the managers and clerks of the election, it would be the duty of the county election commissioners, in canvassing the returns, to inquire into the reason for such refusal; and if convinced that the action of the officer or officers in refusing to certify to the returns was arbitrary and unjust, the returns, as made, should be accepted. In other words, in such case it would be the duty of the county election commissioners to hear evidence and determine whether or not the returns, as made, are true; and if not true, to ascertain and declare the true results. If county election commissioners were without such authority, it will at once be seen that one or more of the officers of an election at only one voting precinct in a county might be enabled to corruptly change the entire result of the election. Under the law it is the duty of the county election commissioners to take the necessary steps to ascertain and declare the true result of the election; and this power of the election commissioners

cannot be destroyed by the arbitrary acts of the managers of the elections at the various voting places in the county.

These principles apply with equal force to the election of school trustees, under section 72 of the School Code, section 8707 of Hemingway's Code of 1927. The county superintendent of education is clothed with powers similar to those of the county election commissioners; and the chairman and secretary of the patrons' meeting for the election of school trustees, with the powers, so far as necessary, which are conferred on the managers and clerks of elections. When the county superintendent of Tate county found that the chairman of the patrons' meeting had refused to certify to the result of the election he should have inquired into the reasons therefor; he should have heard and considered the evidence pro and con; and if, after doing so, he had found that the true returns had been made by the secretary, he should have accepted the certificate of the secretary alone.

There are provisions of the election laws which will be treated as directory, not mandatory, if necessary, in order to ascertain the will of the electors. It is the policy of the law to give effect and validity to elections of the people when there has been a reasonably fair attempt to comply with the requirements of the law, and no fraud has been practiced. Mere technical irregularities and omissions in the performance of ministerial duties by commissioners will not be permitted to defeat the popular will where there has been an attempt to conform to the law and no injury has resulted to any one. When the will of the electors has been fairly expressed, it should control. The court will not countenance purely technical reasons for the overthrow of the result. Pradat v. Ramsey, 47 Miss. 24; Fullwood v. State, 67 Miss. 554, 7 So. 432; Shines v. Hamilton, 87 Miss. 384, 39 So. 1008.

According to the averments of the petition in this cause, the county superintendent of education, having

failed to ascertain the true result of the patrons' meeting, and act thereon, the court was authorized to do for him what he should have done.

Reversed and remanded.